IRENE EGERTON PERRY, RAYMOND CHRISTOPHER PERRY, BESSIE FLETCHER, ANGELA HUNTLEY AND ELIZABETHE PERRY, PLAINTIFFS v. GRP FINANCIAL SERVICES CORPORATION, JWB PROPERTIES, L.L.C., TRIAD RESIDENTIAL, L.L.C., JERRY W. BLACKWELDER, BONNIE BLACKWELDER, ROBERT HEARN, STEPHANIE M. HEARN, ROBERT GILCHRIST AND ROBERT GILCHRIST, JR., DEFENDANTS

No. COA08-80

(Filed 7 April 2009)

## 1. Arbitration and Mediation— sanctions—failure to attend mediation—sufficiency of findings of good cause

The trial court erred in a conversion and unfair and deceptive trade practices case arising out of defendants' actions in a foreclosure and eviction proceeding by imposing sanctions against three of the plaintiffs for not physically attending the mediation, and the case is remanded for further findings of fact as to the rea-

sonableness of any fees, because: (1) the trial court did not make sufficient findings of fact on the issue of good cause for the absences; and (2) while the lack of an earlier explanation may be relevant to the credibility of the explanation or other aspects of the sanctions determination, it does not, standing alone, support a conclusion that no good cause existed despite the parties' affidavits. On remand, the trial court may address the waiver argument including resolution of any factual disputes related to that issue.

**2. Costs— amended version of N.C.G.S. § 7A-305(d)—award following voluntary dismissal without prejudice**

The trial court did not err in a conversion and unfair and deceptive trade practices case arising out of defendants' actions in a foreclosure and eviction proceeding by granting the . Blackwelder defendants' motion for costs based on the amended version of N.C.G.S. § 7A-305(d) (2007) following plaintiffs' voluntary dismissal without prejudice of this action because: (1) contrary to plaintiffs' contention, the amended version of this statute was applicable since the motion for costs in this case was filed on 3 August 2007; and (2) the trial court only taxed costs permitted by N.C.G.S. § 7A-305(d), and thus inclusion of N.C.G.S. § 6-20 in the order did not prejudice plaintiffs.

Appeal by plaintiffs from orders entered 17 August 2007 by Judge Paul C. Ridgeway and 1 October 2007 by Judge Ronald E. Spivey in Forsyth County Superior Court. Heard in the Court of Appeals 23 September 2008.

*Kennedy, Kennedy, Kennedy and Kennedy, LLP, by Harold L. Kennedy, III and Harvey L. Kennedy, for plaintiffs-appellants.*

*Pharr & Boynton, PLLC, by Steve M. Pharr and Stacey D. Bailey, for defendants-appellees JWB Properties, L.L.C., Jerry W. Blackwelder, and Bonnie Blackwelder.*

GEER, Judge.

Plaintiffs Irene Egerton Perry, Raymond Christopher Perry ("Chris Perry"), Elizabethe Perry, Bessie Fletcher, and Angela Huntley appeal from (1) an order entering sanctions against Chris Perry, Bessie Fletcher, and Elizabethe Perry ("the sanctioned·plaintiffs") for their absence at a court-ordered mediation and (2) an order taxing costs against all of the plaintiffs following their voluntary dis-

**PERRY v. GRP FIN. SERVS. CORP.**

[196 N.C. App. 41 (2009)]

missal without prejudice of their claims pursuant to Rule 41 of the North Carolina Rules of Civil Procedure. With respect to the sanctions order, we hold that the trial court did not make sufficient findings of fact to support the award of sanctions and, therefore, reverse and remand that order for further findings of fact. We affirm the order awarding costs.

## Facts

Irene Perry owned a house in Advance, North Carolina. In 2003, GRP Financial Services, who is not a party to this appeal, foreclosed on the house and hired JWB Properties, LLC, owned by Jerry W. and Bonnie Blackwelder (collectively, with JWB Properties, "the Blackwelder defendants"), to provide services relating to the foreclosure and eviction proceedings. Ms. Perry's house contained personal property belonging to Ms. Perry; her two children, Chris Perry and Elizabethe Perry; and her friends, Bessie Fletcher and Angela Huntley. JWB Properties hired Triad Residential, LLC, of which Robert and Stephanie Hearn, Robert Gilchrist, and Robert Gilchrist, Jr. are members (collectively, with Triad Residential, "the Hearn defendants"), to remove from the house plaintiffs' personal property, some of which was taken to landfills in Davie and Davidson Counties.

On 29 June 2006, plaintiffs filed an action in Forsyth County Superior Court against defendants, asserting claims for conversion and unfair and deceptive trade practices arising out of defendants' actions in the foreclosure and eviction proceedings. The complaint also included additional causes of action on behalf of Irene Perry against all defendants for intentional and/or negligent infliction of emotional distress.

The superior court entered an Order for Mediated Settlement Conference requiring that the mediation be completed by 31 May 2007. The order also set a tentative trial date of 11 June 2007. While the parties were attempting to schedule the mediation and depositions, counsel for defendant GRP sent an e-mail to plaintiffs' counsel indicating that his client had asked him to inquire about GRP's participating in the mediation by telephone. Counsel for plaintiffs responded that they had no objection to telephone participation and added: "In fact, Irene Perry will be present at the mediation, but the other plaintiffs will participate by telephone. Irene will be representing all of the plaintiffs at the mediation." In response, counsel for the Blackwelder defendants wrote: "No, we do not consent to allow the plaintiffs or GRP to participate in the mediation by telephone."

The mediation was held on 15 May 2007. Of the plaintiffs, Irene Perry and Angela Huntley were physically present, but Chris Perry, Elizabethe Perry, and Bessie Fletcher did not attend. The mediator, in her report, next to the line asking her to identify the parties "who were absent without permission," wrote: "Bessie Fletcher & Elizabeth [sic] Perry ? Chris Perry called to say he could not get a flight from Ohio that would get him here before 4:30 pm. Mediator told him to stand by cell phone." On the morning of the mediation, Chris Perry, who is a player for the Cincinnati Bengals, called the mediator on his cell phone from the Cincinnati airport to inform her that he would be unable to attend the mediation due to flight delays with his airline. The mediation proceeded as scheduled and lasted eight and a half hours before the mediator declared an impasse. During that time, Bessie Fletcher participated in the opening portion of the mediation by telephone, and Elizabethe Perry and Chris Perry were available by telephone.

On 31 May 2007, the Blackwelder defendants filed a motion for sanctions supported by the affidavits of Steve M. Pharr and Elizabeth W. Ives. Mr. Pharr, managing partner of the law firm representing the Blackwelder defendants, stated in his affidavit that he had "personally reviewed the expenses" incurred by the Blackwelder defendants' counsel in the lawsuit and had itemized them for the court's review. Ms. Ives, a representative of XL Select Professional, the insurance carrier for the Blackwelder defendants, itemized her expenses in attending the mediation. On 29 June 2007, the Hearn defendants also filed a motion for sanctions supported by the affidavit of Steven D. Smith, counsel for the Hearn defendants. In his affidavit, Mr. Smith explained and totaled his charges for preparing for and attending the mediation.

On 6 June 2007, plaintiffs voluntarily dismissed their claims without prejudice. At the hearing on the sanctions motions on 9 July 2007, because plaintiffs challenged the trial court's jurisdiction to hear the motions, the trial court held the matter open to allow time to research that issue. On 12 July 2007, immediately before the reconvened hearing on the sanctions motions, plaintiffs filed a response to the motions supported by the affidavits of Elizabethe Perry, Irene Perry, and Bessie Fletcher. Chris Perry did not file an affidavit.

Elizabethe Perry, in her affidavit, stated that she had originally planned to travel to Winston-Salem, North Carolina for the mediation in this case scheduled for 15 May 2007, but that on 14 May 2007, she was informed by her employer, T.G.I. Friday's in Brooklyn, New York,

that she would not be given permission to attend the mediation because her employer was short-staffed. The affidavit further stated that her employer had not anticipated the situation and that Elizabethe Perry could not afford to lose her job. Elizabethe Perry added that she had given her mother, Irene Perry, full authority to settle the lawsuit during mediation, that she was available by telephone during the mediation, and that she understood that she would have been bound by a settlement if the case had been settled.

Attached to the affidavit was a letter from Elizabethe Perry's supervisor at T.G.I. Friday's on the company's letterhead, dated 6 July 2007, and addressed to plaintiffs' counsel. The letter reported:

> This is to confirm that Elizabethe I. Perry was unable to come to North Carolina because our company was short staffed on Thursday, May 15, 2007.

> Therefore, Elizabethe was not given permission to attend mediation in Winston-Salem, North Carolina. This short staff position was a situation that occurred at the company that we did not anticipate. Elizabethe had previously asked for permission to attend the mediation. When it became apparent that we would be short staffed, we could not allow her the time off she needed.

Irene Perry's affidavit stated that her son, Chris Perry, "had planned to be present at the mediation; that before the mediation began on May 15th, [she] spoke with [her] son by telephone; he informed [her] that the airplane he was taking had been delayed; that he told [her] that the plane was not scheduled to land in Greensboro until around 4:30 p.m." Ms. Perry explained that her son was a professional football player with the Cincinnati Bengals and that he had received permission from the Bengals to attend the mediation despite the fact that he was participating in the Bengals' mini-camp. The affidavit stated that the mediator spoke with Chris Perry and explained what happened and that the mediator told him to be accessible throughout the mediated settlement conference. According to Ms. Perry's affidavit, Chris Perry spoke with plaintiffs' counsel, Ms. Perry, and the mediator several times during the mediation regarding offers and counteroffers. Ms. Perry stated that Chris Perry gave her full settlement authority to settle the case and understood that he would have been bound by any settlement agreement reached.

Bessie Fletcher explained in her affidavit that she "was unable to travel to Winston-Salem, North Carolina for the mediation on May 15,

2007 because [she] did not have the financial means to pay the transportation expenses at that time." Ms. Fletcher stated that she "made arrangements to participate in the mediation by telephone" and "had good cause for not attending the mediation in person because of [her] lack of financial resources."

On 17 August 2007, the trial court entered an order granting the motions for sanctions. The court concluded that plaintiffs' objection and response to the motions for sanctions and the accompanying affidavits "were untimely," but the trial court stated that they "were considered." The trial court further noted that Chris Perry had not filed an affidavit in response to the sanctions motions.

On the merits of the motions, the trial court concluded that all parties were required to physically attend the mediation unless "excused pursuant to the agreement of all parties and persons required to attend and the mediator or by an order of the Senior Resident Superior Court Judge." The court found that plaintiffs' counsel was aware as of 7 March 2007 that one or more of the defendants would not agree to excuse any of the plaintiffs from their obligation to attend the mediated settlement conference in person, but that plaintiffs' counsel had nonetheless "made no effort to secure permission from the Court for Plaintiffs Raymond Christopher Perry, Bessie Fletcher, and Elizabeth [sic] Perry to attend the mediation via telephone conference call, to allow Plaintiff Irene Perry to act as their representative at the mediated settlement conference, or to otherwise excuse [the sanctioned plaintiffs] from their obligation to attend the mediated settlement conference in person."

The trial court found that the sanctioned plaintiffs did not attend the mediation in person although Ms. Fletcher listened to a portion of the opening remarks by telephone. The trial court noted that defendants and the mediator "were told that Raymond Christopher Perry was unable to book a flight from Ohio to Winston Salem [sic] that would enable him to arrive in Winston Salem [sic] before 4:30 p.m. on May 15, 2007[.]" He further found that Chris Perry is a professional football player and "possessed the financial means to make arrangements to attend the mediation[.]" With respect to Bessie Fletcher and Elizabethe Perry, the trial court noted only that "until the affidavits of Irene Egerton Perry, Bessie Fletcher and Elizabeth [sic] I. Perry were filed with the Court on July 12, 2007, no explanation was given for the failure of Bessie Fletcher and Elizabeth [sic] Perry to attend the mediation in person on May 15, 2007[.]"

Based on these findings of fact, the trial court concluded that "no good cause was shown for the failure of Plaintiffs Raymond Christopher Perry, Bessie Fletcher and Elizabeth [sic] Perry to attend the mediation." The trial court, therefore, granted the Blackwelder and Hearn defendants' motions for sanctions. Based on findings of fact regarding the attorneys' fees incurred for attendance at the mediation and prosecution of the motion for sanctions, as well as expenses incurred in connection with the mediation, the trial court entered judgment in favor of the Blackwelder defendants in the amount of $3,903.78 and in favor of the Hearn defendants in the amount of $2,439.37 against the sanctioned plaintiffs, jointly and severally.

On 3 August 2007, the Blackwelder defendants filed a motion for costs. In an order filed 7 September 2007, the trial court concluded "in its sound discretion, and pursuant to Rule 41(d) of the North Carolina Rules of Civil Procedure and N.C. Gen. Stat. § 6-20 and § 7A-305(d), as amended by SL 2007-212, § 3, eff. Aug. 1, 2007, that the motion [for costs] should be granted[.]" The trial court accordingly ordered that plaintiffs, jointly and severally, be taxed with costs in the amount of $4,352.20. The order specified that the costs be paid within 30 days of the signing of the order. On 1 October 2007, the trial court entered an amended order omitting the 30-day requirement.

On 28 August 2007, plaintiffs filed notice of appeal from the 17 August 2007 order granting defendants' motions for sanctions. On 30 October 2007, plaintiffs filed notice of appeal from the 1 October 2007 order granting the Blackwelder defendants' motion for costs.

## Motion for Sanctions

[1] We first address the sanctioned plaintiffs' appeal of the order imposing sanctions against Chris Perry, Elizabethe Perry, and Bessie Fletcher for not physically attending the mediation. N.C. Gen. Stat. § 7A-38.1(f) (2007) provides regarding attendance at a court-ordered mediated settlement conference:

> The parties to a superior court civil action in which a mediated settlement conference is ordered, their attorneys and other persons or entities with authority, by law or by contract, to settle the parties' claims shall attend the mediated settlement conference unless excused by rules of the Supreme Court or by order of the senior resident superior court judge.

Rule 4A(1) of the Rules for Statewide Mediated Settlement Conferences specifies that "[a]ll individual parties," as well as at least one counsel of record, must attend the mediation.

Rule 4A(2) clarifies that attendance means being physically present at the mediation: "Any party or person required to attend a mediated settlement conference shall physically attend until an agreement is reduced to writing and signed as provided in Rule 4.C. or an impasse has been declared." Rule 4A(2) then sets out the only exceptions to physical attendance:

> Any such party or person [required to attend a mediated settlement conference] may have the attendance requirement excused or modified, including the allowance of that party's or person's participation without physical attendance:
>
> (a) By agreement of all parties and persons required to attend and the mediator; or
>
> (b) By order of the Senior Resident Superior Court Judge, upon motion of a party and notice to all parties and persons required to attend and the mediator.

With respect to sanctions for non-attendance, N.C. Gen. § 7A-38.1(g) provides that "[a]ny person required to attend a mediated settlement conference who, *without good cause*, fails to attend in compliance with this section and the rules adopted under this section, shall be subject to any appropriate monetary sanction imposed by a resident or presiding superior court judge, including the payment of attorneys' fees, mediator fees, and expenses incurred in attending the conference." (Emphasis added.) Rule 5 implements this statutory provision and specifies that *if* the party "fails to attend without good cause," then a superior court judge "may impose upon the party or person any appropriate monetary sanction including, but not limited to, the payment of fines, attorneys fees, mediator fees, expenses and loss of earnings incurred by persons attending the conference."

In arguing that the trial court erred in imposing sanctions, the sanctioned plaintiffs first assert that the mediator authorized Chris Perry and Bessie Fletcher to participate in the mediation by telephone, and, therefore, they cannot now be sanctioned for their absence. As an initial matter, we are not persuaded that the record shows that the mediator in fact excused them from being physically present at the mediation. The Mediator's Report specifically identified Bessie Fletcher and Elizabethe Perry as parties absent without

permission. With respect to Chris Perry, the report noted what he had told the mediator, but did not specify that his absence was authorized. Rather than authorizing the parties' absence, the record indicates that the mediator was simply complying with the requirement in Rule 6A(4)(a) of the Rules for Statewide Mediated Settlement Conferences that she note any absent parties in her report.

Even assuming, however, that the Mediator's Report could be read as indicating the mediator's express permission for the absences, the mediator lacked authority to grant such permission. Neither N.C. Gen. Stat. § 7A-38.1(f) nor Rule 4A provides a mediator with authority to excuse a party from physical attendance at a court-ordered mediation. N.C. Gen. Stat. § 7A-38.1(f) states that a party *shall* attend a mediation unless excused by (1) the rules of the Supreme Court regarding mediated settlement conferences or (2) order of the senior resident superior court judge. Similarly, Rule 4A(2) provides only that a party may be excused from a mediation by (1) agreement of all parties required to attend and the mediator or (2) order of the senior resident superior court judge.

The sanctioned plaintiffs, however, argue that Rule 6A(1) and (2) grant the mediator authority to allow parties to be absent from a mediation. Rule 6A(1) states that "[t]he mediator shall at all times be in control of the conference and the procedures to be followed." Rule 6A(2) provides that "[t]he mediator may communicate privately with any participant or counsel prior to or during the conference." Neither provision specifically refers to attendance at a mediation, and we do not believe that they can reasonably be read as overriding the specific language in N.C. Gen. Stat. § 7A-38.1(f) and Rule 4A(2) regarding the manner in which a party may be excused. Indeed, plaintiffs' construction would effectively negate any need for the parties' agreement in Rule 4A(2)(b).

North Carolina's appellate courts have repeatedly recognized that "[w]here one of two statutes might apply to the same situation, the statute which deals more directly and specifically with the situation controls over the statute of more general applicability." *Trustees of Rowan Technical College v. J. Hyatt Hammond Assocs.*, 313 N.C. 230, 238, 328 S.E.2d 274, 279 (1985). As this Court has stated, "[w]hen conflicting statutes are construed, the specific controls over the general if the statutes cannot be reconciled." *Hummer v. Pulley, Watson, King & Lischer, P.A.*, 140 N.C. App. 270, 283, 536 S.E.2d 349, 357 (2000). Since Rule 4A(2) and N.C. Gen. Stat. § 7A-38.1(f) specifically address the issue of how a party can be excused from physical par-

ticipation in a mediation, and since Rule 6A does not directly address the issue but rather only addresses generally a mediator's authority, Rule 4A(2) and N.C. Gen. Stat. § 7A-38.1(f) control. The mediator, therefore, did not have authority to unilaterally authorize the sanctioned plaintiffs to be physically absent from the mediation.

It is undisputed in this case that no superior court order was issued to excuse the sanctioned plaintiffs from attending the mediation. The record also indicates, as the trial court found, that prior to the mediation, in an e-mail on 7 March 2007, the Blackwelder defendants objected to the absence of any party from the mediation. Thus, because the sanctioned plaintiffs were not excused from attending the mediation, they could be sanctioned by the superior court unless they showed good cause for their absences. In *Triad Mack Sales & Serv., Inc. v. Clement Bros. Co.*, 113 N.C. App. 405, 408, 438 S.E.2d 485, 487 (1994) (quoting *Societe Internationale Pour Participations Industrielles v. Rogers*, 357 U.S. 197, 211, 2 L. Ed. 2d 1255, 1267, 78 S. Ct. 1087, 1095 (1958)), this Court defined "good cause" in this context as a party's "inability to attend caused 'neither by its own conduct nor by circumstances within its control.' "

The sanctioned plaintiffs contend that an award of sanctions was improper because contrary to Rule 5 of the Rules for Statewide Mediated Settlement Conferences, defendants' motions did not "set[] forth the reasons that said Plaintiffs failed to attend without 'good cause.' " Rule 5 specifies that a party seeking sanctions "shall do so in a written motion stating the grounds for the motion and the relief sought."[1] Defendants' motions, each stating that the sanctioned plaintiffs had not been excused from physically attending the mediated settlement conference and had provided no reason or explanation for their absence, adequately met the requirement in Rule 5 that they state the grounds for the motion.

Turning to the trial court's order, however, we agree with the sanctioned plaintiffs that the trial court did not make sufficient findings of fact on the issue of "good cause." The sanctioned plaintiffs, with the exception of Chris Perry, submitted affidavits explaining the reason for their physical absence. Although the trial court determined that these affidavits were not timely filed, it specifically stated that it had considered them in deciding defendants' motions for sanctions.

---

1. N.C. Gen. Stat. § 7A-38.1(g) was amended effective 1 January 2009 to contain an identical requirement that the party seeking sanctions "do so in a written motion stating the grounds for the motion and the relief sought."

PERRY v. GRP FIN. SERVS. CORP.

[196 N.C. App. 41 (2009)]

Although the affidavits of Elizabethe Perry and Bessie Fletcher each provided a concrete explanation for their absence, the trial court never explained why it decided those reasons did not amount to "good cause." Elizabethe Perry stated that her employer unexpectedly refused to give her time off from work and attending the mediation would have cost her her job. Bessie Fletcher asserted that she did not have the financial means to attend. Each of these reasons could—if believed—arguably qualify as "good cause" under *Triad Mack Sales*, although we do acknowledge that Ms. Fletcher did not include any explanation in her affidavit for not raising the issue earlier. In any event, the trial court did not address the explanations provided by Elizabethe Perry and Bessie Fletcher for their absence. Indeed, although the trial court specifically found that Chris Perry "possessed the financial means to make arrangements to attend the mediation," the trial court made no similar finding as to either Elizabethe Perry or Bessie Fletcher.

The only finding set out in the order related to the trial court's determination that Elizabethe Perry and Bessie Fletcher lacked "good cause" for their absence is the court's finding that "until the affidavits of Irene Egerton Perry, Bessie Fletcher and Elizabeth [sic] I. Perry were filed with the Court on July 12, 2007, no explanation was given for the failure of Bessie Fletcher and Elizabeth [sic] Perry to attend the Mediation in person on May 15, 2007." This finding does not specifically address whether Elizabethe Perry and Bessie Fletcher had shown "good cause" for their absence. While the lack of an earlier explanation may be relevant to the credibility of the explanation or other aspects of the sanctions determination, it does not, standing alone, support a conclusion that no "good cause" existed despite the parties' affidavits.

With respect to Chris Perry, the court noted the absence of an affidavit from him. Both the mediator's report and his mother's affidavit, however, provided an explanation for his absence, and the trial court's order contains no specific determination that it would not consider either Ms. Perry's affidavit or the mediator's report in deciding whether to sanction Chris Perry. While the trial court did find that Mr. Perry had the financial means to attend the mediation, it did not specifically explain why it had concluded that his flight problems did not constitute "good cause."

On appeal, defendants have suggested various reasons why the trial court could have deemed the sanctioned plaintiffs' explanations

insufficient under *Triad Mack Sales*. None of defendants' proffered reasoning is, however, reflected in the trial court's findings of fact, and we cannot speculate regarding the bases for the trial court's decision. In order to ensure meaningful review on appeal, "[t]he trial court must . . . make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law." *Spicer v. Spicer*, 168 N.C. App. 283, 287, 607 S.E.2d 678, 682 (2005). *See also Davis v. Wrenn*, 121 N.C. App. 156, 160, 464 S.E.2d 708, 711 (1995) (remanding for further findings of fact when trial court's order failed to include findings of fact explaining how plaintiff's conduct violated Rule 11), *cert. denied*, 343 N.C. 305, 471 S.E.2d 69 (1996), *overruled in part on other grounds by Forbis v. Neal*, 361 N.C. 519, 649 S.E.2d 382 (2007). Because the order awarding sanctions contains insufficient findings of fact to explain the trial court's decision to award sanctions, we reverse the order and remand for further findings of fact.

In the event that the trial court on remand again determines that sanctions are appropriate, the trial court must also make additional findings of fact as to the amount of those sanctions. In the order granting sanctions, the trial court simply recited the amounts of attorneys' fees sought without making any findings regarding the reasonableness of the fees.

In reviewing attorneys' fee awards in other contexts, including under Rules 11 and 37 of the Rules of Civil Procedure and pursuant to N.C. Gen. Stat. § 6-21.1 (2007), this Court has required that the trial court make findings of fact to support the amount of attorneys' fees awarded. *See, e.g., Parker v. Hensley*, 175 N.C. App. 740, 742, 625 S.E.2d 182, 184 (2006) (holding that "where a trial court awards attorney fees under North Carolina General Statute section 6-21.1, the trial court must also make findings of fact supported by competent evidence concerning the time and labor expended, skill required, customary fee for like work, and experience or ability of the attorney based on competent evidence" (internal quotation marks omitted)); *Couch v. Private Diagnostic Clinic*, 146 N.C. App. 658, 672, 554 S.E.2d 356, 366 (2001) (explaining in Rule 11 case that "an award of attorney's fees usually requires that the trial court enter findings of fact as to the time and labor expended, skill required, customary fee for like work, and experience or ability of the attorney based on competent evidence"), *appeal dismissed and disc. review denied*, 355 N.C. 348, 563 S.E.2d 562 (2002); *Benfield v. Benfield*, 89 N.C. App.

415, 422-23, 366 S.E.2d 500, 504-05 (1988) ("[A]s Rule 37(a)(4) requires the award of expenses to be reasonable, the record must contain findings of fact to support the award of any expenses, including attorney's fees. . . . The trial court simply awarded attorney's fees in the amount of $250. The order contained no findings of fact to support any conclusion that the fees were reasonable. Therefore, the award of attorney's fees is vacated and remanded for findings to support the award.").

We see no reason to distinguish an award of sanctions under N.C. Gen. Stat. § 7A-38.1 and Rule 5 from sanctions awarded under Rule 11, Rule 37, and N.C. Gen. Stat. § 6-21.1, all of which require a finding of reasonableness. Defendants concede in their brief that "awards of attorneys' fees typically require some finding that the expenses were incurred and were reasonable," but argue that under *Dyer v. State*, 331 N.C. 374, 416 S.E.2d 1 (1992), the trial court's findings were sufficient to support its award.

In *Dyer*, however, the primary issue before the Supreme Court was whether the evidence supported the trial court's findings of fact. *Id.* at 378, 416 S.E.2d at 3. The trial court in *Dyer* did not simply award the amount of fees sought by the party, but rather asked counsel how many hours he had spent on the case, then determined on its own that $50.00 an hour would be a reasonable hourly rate. The court then found that counsel had spent more than 75 hours preparing and trying the case and awarded $3,500.00 as attorneys' fees. The Supreme Court held that the trial court was entitled to rely upon the representation of the attorney and its own observations of the quality of trial counsel's representation. *Id.* The Court then concluded that "[t]he findings of fact are supported by the evidence and the findings of fact support the conclusion of the court. The court did not abuse its discretion in awarding the attorney's fee." *Id.* The Supreme Court did not specifically address what findings of fact the trial court was required to make.

In this case, the trial court made no findings of fact at all other than to reiterate the amount of attorneys' fees sought by each party. We hold, consistent with this Court's prior opinions regarding the required findings of fact for attorneys' fee awards, that the trial court erred in failing to make any findings related to the reasonableness of the attorneys' fees sought and awarded. On remand, therefore, the trial court must also make further findings of fact regarding the amount of any sanction ultimately awarded.

Finally, plaintiffs have argued that no sanction at all is appropriate because defendants waived their right to seek sanctions by participating in the mediation for eight and a half hours without objecting to the sanctioned plaintiffs' absence. In support of this argument, plaintiffs cite two cases in which this Court held that a party waived its right to challenge an arbitration award by participating without objection in the arbitration. *See Miller v. Roca & Son, Inc.*, 167 N.C. App. 91, 94-95, 604 S.E.2d 318, 320 (2004) (holding that insurance company waived its right to object to arbitration award because it agreed to arbitrate without reserving right to proceed later on particular issue in superior court); *McNeal v. Black*, 61 N.C. App. 305, 307-08, 300 S.E.2d 575, 577 (1983) (holding that because stockbroker participated in arbitration without objecting or demanding jury trial, stockbroker waived his right to object to arbitration award later). This waiver argument was not specifically addressed by the trial court, and any determination of that issue would first require resolution of a factual dispute.

The sanctioned plaintiffs' argument depends upon their contention that defendants did not, at the mediation, object to their absence. In response to this argument, defendants submitted to this Court the affidavit of David S. O'Quinn, an attorney that attended the mediation, stating that counsel for the Blackwelder defendants objected at the beginning of the mediation to the sanctioned plaintiffs' absence.

Mr. O'Quinn's affidavit was not part of the record before the trial court and, therefore, is not properly considered by this Court. *See Penland v. Bird Coal Co.*, 246 N.C. 26, 34, 97 S.E.2d 432, 438 (1957) ("[T]he Supreme Court acts upon the record that was before the Superior Court, and upon that alone, and if the record was defective, it should have been amended in the Superior Court. The Supreme Court can judicially know only what appears in the record which was before the Superior Court. Accordingly, matters which were not in the record before the Superior Court, but which are sent up with the transcript to the Supreme Court, are no more a part of the record in the Supreme Court than they were in the Superior Court, and may not be made so by certificate of the court below." (internal citations omitted)). Since we are remanding this matter to the trial court for further findings of fact, the trial court may, on remand, address the waiver argument, including resolution of any factual disputes related to that issue.

Motion for Costs

[2] All of the plaintiffs appeal the award of costs to the Blackwelder defendants following plaintiffs' voluntary dismissal without prejudice of this action. They first argue that the trial court erred by relying upon the amended version of N.C. Gen. Stat. § 7A-305(d) (2007) in determining what expenses were properly included as costs. *See* 2007 N.C. Sess. Laws ch. 212, § 3. Plaintiffs contend that the statute does not apply to them because their case was dismissed before it went into effect.

The plain language of the session law is, however, to the contrary. The session law specifically provided as to the amendments to N.C. Gen. Stat. § 7A-305: "This act becomes effective August 1, 2007, and applies *to all motions* for costs filed on or after that date." 2007 N.C. Sess. Laws ch. 212, § 4 (emphasis added). The motion for costs in this case was filed on 3 August 2007. The amended version of N.C. Gen. Stat. § 7A-305(d) was, therefore, applicable to that motion.

Plaintiffs also argue that the trial court erred in citing N.C. Gen. Stat. § 6-20 (2007), as well as § 7B-305(d), as the basis for its award of costs, when the Blackwelder defendants cited only § 7A-305(d) in their motion. The applicable version of N.C. Gen. Stat. § 6-20 provides: "In actions where allowance of costs is not otherwise provided by the General Statutes, costs may be allowed in the discretion of the court. Costs awarded by the court are subject to the limitations on assessable or recoverable costs set forth in G.S. 7A-305(d), unless specifically provided for otherwise in the General Statutes." Since there is no dispute that the trial court, in its order, only taxed costs permitted by N.C. Gen. Stat. § 7A-305(d), we cannot see how inclusion of N.C. Gen. Stat. § 6-20 in the order prejudices plaintiffs. We, therefore, overrule this assignment of error and affirm the order granting the Blackwelder defendants' motion for costs.

Conclusion

We reverse the order awarding sanctions under N.C. Gen. Stat. § 7A-38.1(g) and remand for further findings of fact as to the issue of good cause. If the trial court determines that one or more of the plaintiffs lacked good cause for failing to attend the mediation, then the court must determine whether sanctions are appropriate. If attorneys' fees are awarded, the order must include findings of fact as to the reasonableness of the fees. We affirm the trial court's order granting costs to defendants.

Affirmed in part; reversed and remanded in part.

Judges ROBERT C. HUNTER and ELMORE concur.